IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01303-PAB-MEH

BARRY G. GUSTAFSON, a resident of Colorado,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE CO., a Wisconsin corporation,

Defendant.
_____

**ORDER**
_____

        This matter is before the Court on the Motion for Summary Judgment [Docket

No. 34] filed by defendant American Family Mutual Insurance Co. ("American Family")

and the Motion for Summary Judgment – Breach of Contract and Estoppel – Liability

Only [Docket No. 36] filed by plaintiff Barry G. Gustafson.  The motions are fully briefed

and ripe for disposition.  The issues raised in their motions arise from American

Family's unsuccessful suit against plaintiff, a former American Family insurance agent,

and whether American Family had a duty to defend plaintiff against American Family's

own lawsuit.

## I. BACKGROUND[1]

        Mr. Gustafson worked for American Family as an insurance agent for

approximately twenty-six years before he voluntarily resigned on July 21, 2008.  While

working as an agent for American Family, Mr. Gustafson initially operated his insurance

---

[1]The following facts, unless otherwise indicated, are not in dispute.

agency out of an office located at 1442 N. Taft Ave., Loveland, Colorado.  In December

2006, Mr. Gustafson moved his American Family insurance agency to a building

located at 4308 N. Garfield Avenue, Loveland Colorado (the "Garfield Office").  Docket

No. 36-5 at 2, ¶¶ 6-7.  At the time, Mr. Gustafson and his wife, Lynn Gustafson, used

the Garfield Office as a rental dwelling and it was insured under an American Family

Businessowners Policy ("BOP").  Docket No. 37-5 at 14 (CD R. RFPD 0752).

        Shortly after relocating to the Garfield Office, Mr. Gustafson completed an

application with American Family to modify the BOP to reflect that the primary use of

the Garfield Office had changed from a rental dwelling to an insurance agency.  *See*

Docket No. 36-12 at 1.  American Family processed Mr. Gustafson's request and

issued a BOP, which reflected that the Garfield Office would be used as an insurance

agency.  *See* Docket No. 36-13 at 1.  The change in the coverage was effective as of

May 1, 2007.  *See id*.  According to Wilfrido A. David, the Rule 30(b)(6) representative

for American Family, changing the primary use of the Garfield Office did not alter the

coverage provided by the BOP because the same policy can insure rental properties

and insurance agencies.  Docket No. 36-10 at 12 (Rule 30(b)(6) Dep. 47:7-11).

        The BOP for the Garfield Office provided coverage, in pertinent part, for the

following:

> **A.  Coverages**
>   **1.  Business Liability**
>      **a.** [American Family] will pay those sums that the insured
>      becomes legally obligated to pay as damages because of
>      "bodily injury," "property damage" or "personal and
>      advertising injury" to which this insurance applies.
>      [American Family] will have the right and duty to defend the
>      insured against any "suit" seeking those damages.

> However, [American Family] will have no duty to defend the
> insured against any "suit" seeking damages for "bodily
> injury," "property damage" or "personal and advertising
> injury," to which this insurance does not apply.
>
>      . . .
>
> **b.** This insurance applies: . . .
>
> > **(2)** To "personal and advertising injury" caused by an
> > offense arising out of your business, but only if the
> > offense was committed in the "coverage territory"
> > during the policy period.

Docket No. 37-2 at 14 (CD R. RFPD 0689).  The BOP defined "advertisement" and

"personal and advertising injury" as:

> 1. "Advertisement" means a notice that is broadcast or published to the
> general public or specific market segments about your goods, products or
> services for the purpose of attracting customers or supporters . . .
>
> 14.   "Personal and advertising injury" means injury, including
> consequential "bodily injury" arising out of one or more of the following
> offenses: . . .
>
> f.   The use of another's advertising idea in your "advertisement" . . .

Docket No. 37-3 at 2-3 (CD R. RFPD 0698-0699).  Exclusions to the BOP coverage

included:

> **B. Exclusions**
> > 1.  Applicable to Business Liability Coverage:
> > This insurance does not apply to . . .
> >
> > p.  "Personal and Advertising Injury":
> >
> > > (1) Caused by or at the direction of the insured with
> > > the knowledge that the act would violate the rights of
> > > another and would inflict "personal and advertising
> > > injury";
> > >
> > > (2) Arising out of oral or written public publication of
> > > material, if done by or at the direction of the insured
> > > with knowledge of its falsity . . .

3

Docket No. 37-2 at 16, 19 (CD R. RFPD 0691, 0694).  The BOP coverage extended to

the following:

### C.   Who is an Insured

**1**.   If you are designated in the Declarations as:

**a.**   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
**b.**   A partnership or joint venture, you are an insured.  Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

*Id*. at 21 (CD R. RFPD 0696).

In addition to the BOP for the Garfield Office, Mr. Gustafson kept a general

umbrella policy which insured approximately twenty other business ventures.  Docket

No. 36-10 at 8 (Rule 30(b)(6) Dep. 31:14-17).  Sometime after May 2007, Mr.

Gustafson asked American Family to consolidate his separate BOPs under one general

umbrella policy.  As Mr. David testified in his Rule 30(b)(6) deposition, in order to align

the BOP for the Garfield Office with the general umbrella policy, American Family had

to change the BOP number for the Garfield Office policy.  *Id*. (Rule 30(b)(6) Dep. 31:17-

25).  Pursuant to Mr. Gustafson's request, on September 7, 2007, American Family

changed the BOP number for the Garfield Office policy from 05X34673-07 to

05X34673-09.  *Compare* Docket No. 36-13 at 1 *with* Docket No. 36-14 at 1.  Mr. David

testified that the change in the policy numbers should have had no substantive effect on

the coverage afforded by the BOP.  Docket No. 36-10 at 9 (Rule 30(b)(6) Dep. 33:20-

22).

On September 10, 2007, American Family wrote Mr. Gustafson a letter advising him of the change in policy numbers.  Docket No. 36-15.  The letter from American Family indicated that the new policy number would be "05-X3467309" but otherwise did not mention a change in policy coverage.  *Id.*  However, the act of conforming Mr. Gustafson's insurance policies did in fact result in a change to the Garfield Office BOP.  Docket No. 36-10 at 10 (Rule 30(b)(6) Dep. 39:9-22).  As Mr. David Testified in his Rule 30(b)(6) deposition, American Family made a clerical error when it performed Mr. Gustafson's request and issued a new policy to Mr. Gustafson on September 7, 2007.  Instead of describing the Garfield office as an "Insurance Agent/Broker Office," it used the previous description of a "Rental Dwelling."  The clerical error voided Mr. Gustafson's change request of May 1, 2007 and arguably cancelled coverage for insurance activities conducted at the Garfield Office.  *See also* Docket No. 36-14 at 1.  American Family did not alert Mr. Gustafson to this change and he was otherwise unaware of any change in coverage.

In his deposition, Mr. Gustafson testified that he did not notice American Family's clerical error because his wife reviewed the insurance policies.  Docket No. 35-13 at 4 (Mr. Gustafson Dep. 55:3-13).  In her deposition, Mrs. Gustafson said that she may have noticed that the declarations page did not name the "Barry G. Gustafson Agency" as the insured but she did not think it needed to reflect such a name because Mr. Gustafson and Mrs. Gustafson owned the building together.  Docket No. 35-15 at 3 (Mrs. Gustafson Dep. 15:1-7, 15:25-16:9).  Mr. Gustafson alleges that the name listed on the declarations page does not alter the coverage provided to the Garfield Office

because American Family's underwriters knew the nature of his businesses included rental dwellings and the insurance agency.  Docket No. 36-11 at 5 (CD R. RFPD 2921).

On July 22, 2008, one day after his resignation from American Family, Mr. Gustafson opened his own insurance agency, Advantage Insurance, LLC ("Advantage Insurance").  Mr. Gustafson operated Advantage Insurance from the Garfield Office.  To advertise his new agency, Mr. Gustafson covered an American Family lawn sign in front of the Garfield Office with a temporary vinyl sign he designed.  Mr. Gustafson testified at his deposition that the temporary vinyl sign did not include any American Family slogans, trademarks, or other insignia related to American Family.  Docket No. 35-13 at 3 (Mr. Gustafson Dep. 38:14-25).  However, because the lawn sign was backlit, "you could still see 'American Family Insurance, Barry Gustafson Agency' through" Mr. Gustafson's temporary vinyl sign at night.  Docket No. 36-4 at 3 (Rule 30(b)(6) Dep. 130:2-5).

Shortly after Mr. Gustafson opened Advantage Insurance, hundreds of policyholders canceled their policies with American Family and purchased coverage with Advantage Insurance.  American Family discovered that Mr. Gustafson had performed "broad searches" of American Family's customer database several weeks before he resigned.  Docket No. 35-4 at 5 (Rule 30(b)(6) Dep. 153:1-12).  In addition, American Family states that at least one former American Family policyholder obtained insurance coverage through Advantage Insurance before Mr. Gustafson's resignation on July 1, 2008.  Docket No. 35-6.  Mr. Gustafson disputes American Family's characterization of these events.

6

On December 19, 2008, American Family filed suit [Docket No. 36-1] against Mr. Gustafson in this District.  *See American Family Mut. Ins. Co. v. Gustafson*, No. 08-cv-02772-MSK (the "Underlying Action").  American Family's claims against Mr. Gustafson in the Underlying Action included a claim for violation of the Colorado Consumer Protection Act ("CCPA").  Docket No. 36-1 at 6-10.  The complaint alleged the following with respect to the CCPA claim:

> Upon information and belief, [Mr. Gustafson] falsely advertised and solicited to American Family customers to switch their policies from American Family to his Advantage Insurance . . .
>
> Upon information and belief, he directed insureds to come into his office, and then he solicited their business and redirected them to the correct American Family office.
>
> Gustafson's deceptive trade practices occurred in the course of his business . . .
>
> As a result of Gustafson's deceptive trade practices, American Family has suffered and continues to suffer damages as well as irreparable harm.

*Id*. at 7-8, ¶¶ 42-45.

Mr. David testified at the Rule 30(b)(6) deposition in the Underlying Action that American Family based its CCPA claim on the fact that, at night, Mr. Gustafson's temporary vinyl sign illuminated parts of the old American Family sign which said "American Family Insurance, Barry Gustafson Agency."  Docket No. 36-4 at 3 (Rule 30(b)(6) Dep. 130:1-5).  On April 30, 2009, after Mr. David's deposition, Mr. Gustafson concluded that American Family's CCPA claim raised an "advertising injury" as that term is defined in the BOP, Docket No. 36-17 at 4, and therefore requested that American Family defend the Underlying Action pursuant to the terms of the BOP for the Garfield Office.  Docket No. 36-17.

Because of the conflict of interest created by American Family being asked to pay the cost of defending its own lawsuit against Mr. Gustafson, American Family hired outside counsel, Kathleen Chaney, to provide an opinion letter with regard to coverage. Ms. Chaney's opinion letter found that American Family had no duty to defend because (1) Mr. Gustafson's agency was not the named insured on the declarations page, (2) there was no "advertising injury" as that term is defined in the BOP, and (3) the complaint in the Underlying Action did not establish a causal link between the advertisement and American Family's damages. Docket No. 36-18 at 17-21. On June 11, 2009, based on Ms. Chaney's opinion letter, American Family denied Mr. Gustafson's defense request. *See id.* at 1-2.

After the close of discovery in the Underlying Action, American Family amended its complaint and voluntarily dismissed its claim against Mr. Gustafson for violations of the CCPA. Docket No. 36-2 at 2 n.2. Both parties then filed cross motions for summary judgment. The court in the Underlying Action granted Mr. Gustafson's motion for summary judgment, denied American Family's motion for summary judgment, and dismissed all of American Family's claims for relief. *Id.* at 18-19.

On May 17, 2011, after the conclusion of the Underlying Action, Mr. Gustafson brought the present action seeking a declaratory judgment that American Family had breached its duty to defend him in the Underlying Action. In his complaint, Mr. Gustafson asserts claims against American Family for breach of contract, breach of the duty of good faith and fair dealing, unreasonable delay or denial in connection with an insurance claim in violation of Colo. Rev. Stat. §§ 10-3-1115, 10-3-1116, estoppel, and abuse of process. Docket No. 1 at 21-28.

8

On January 20, 2012, both parties filed motions for summary judgment raising two central issues: (1) whether Mr. Gustafson's insurance activities were covered by American Family's insurance policy; and (2) whether American Family had a duty to defend Mr. Gustafson in the Underlying Action.  American Family's summary judgment motion also argues that there are no genuine disputes of material fact with regard to Mr. Gustafson's claims for breach of common law bad faith, unreasonable delay in violation of Colorado statutes, and abuse of process.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, (1986); *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non moving party.  *Id.; see McBeth v. Himes*, 598 F.3d

708, 715 (10th Cir. 2010).  However, where, as here, there are cross motions for

summary judgment, the reasonable inferences drawn from affidavits, attached exhibits,

and depositions are rendered in the light most favorable to the non prevailing party.

*Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004).  Furthermore, "[w]hen the

parties file cross motions for summary judgment, [the Court may] assume that no

evidence needs to be considered other than that filed by the parties, but summary

judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic*

*Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000)

(internal quotation marks omitted).

## III.  ANALYSIS

### A.  Duty to Defend

Mr. Gustafson argues that his activities as an insurance agent were covered by

the BOP for the Garfield Office.  He also argues that the complaint in the Underlying

Action, in combination with the deposition testimony from Mr. David, establishes that

American Family had a duty to defend the Underlying Action.  The Court addresses

these issues in turn.

#### 1.  *Insurance Coverage*

Under Colorado law, if an insurer fails to provide adequate notice to the insured

of a decrease in coverage for a general comprehensive liability policy before the

expiration of the insured's existing policy, the insured's existing policy is automatically

renewed for a full term under the same terms, conditions, and premiums as the existing

policy.  Colo. Rev. Stat. § 10-4-110.5(1); *Granite State Ins. Co. v. Ken Caryl Ranch*

*Master Ass'n*, 183 P.3d 563, 564 (Colo. 2008).  The automatic renewal of the insured's existing policy only occurs if the insurer fails to provide adequate notice to the insured before the expiration of the insured's existing policy.  *Id*.  Under § 10-4-110.5(2), a notice of a decrease in coverage benefits during the term of a policy is valid if the insurer bases the decrease in the policy on "(a) [n]on payment of premium; (b) [a] false statement knowingly made by the insured on the application for insurance; (c) [a] substantial change in the exposure or risk other than that indicated in the application . . . unless the insured has notified the insurer of the change and the insurer accepts such change."  Colo. Rev. Stat. § 10-4-110.5(2).

American Family claims that it gave Mr. Gustafson adequate notice that his existing policy would be cancelled and a new policy issued.  Docket No. 38 at 8-9. However, it is undisputed that American Family's September 10, 2007 letter merely notified Mr. Gustafson of a change in the policy number and did not inform Mr. Gustafson of a change in insurance coverage, i.e. changing the primary use of the Garfield Office from "Insurance Agent/Broker Office" to "Rental Dwelling."  *See* Docket No. 36-15.  Modification of the Garfield Office's primary use constitutes a decrease in coverage as that term is defined in the statute.  *Cf. Supreme Auto Transp. v. Athena Assurance Co.*, No. 04-cv-02323-EWN-PAC, 2006 WL 894892, at *9 (D. Colo. March 31, 2006) (finding the exclusion of one driver of a commercial carrier constituted a reduction in coverage benefits).  Accordingly, the September 10, 2007 notice was deficient under Colo. Rev. Stat. § 10-4-110.5 because it failed to identify the reasons for the decrease in coverage.  *See Westcor Co. II Ltd. P'ship v. Travelers Indemnity Co.*,

No. 05-cv-00597-LTB-CBS, 2006 WL 1752338, at *5 (D. Colo. June 22, 2006) (finding a notice sent by an insurance company deficient because it did not identify renewal terms or reference that the changes were decreases in coverage).  Moreover, an insurer that seeks to restrict coverage must call limiting conditions to the attention of the insured, *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489, 496 (Colo. 2009), and upon failing to do so, is bound by the greater coverage in the earlier policy.  *Id*. Here, it is undisputed that American Family never notified Mr. Gustafson of the decrease in coverage based on its clerical error.  Thus, the fact that Mr. Gustafson and Mrs. Gustafson did not read the declarations page is irrelevant because American Family had a duty to apprise them of any changes.  Because American Family did not provide Mr. Gustafson with the requisite notice regarding the decrease in coverage, the clerical error cannot be deemed to restrict coverage to Mr. Gustafson.[2]

The next issue is whether Mr. Gustafson is entitled to summary judgment that his activities as an insurance agent were covered under the terms of the May 1, 2007 endorsement even though he was no longer an American Family agent.  Under

---

[2]Because American Family had a duty to notify Mr. Gustafson of any changes in coverage and it failed to provide the requisite notice regarding the coverage changes, § 10-4-110.5 dictates that the terms of Mr. Gustafson's policy from May 1, 2007 automatically extended for a full-term when it expired on May 1, 2008.   Colo. Rev. Stat. § 10-4-110.5.  *Westcor*, 2006 WL 1752338 at *6; *Granite*, 183 P.3d at 568 (finding that a late notice in the change of coverage benefits triggers a 45-day automatic coverage of the policy, but a failure to notify the insured at all results in a full-term renewal); *Supreme Auto*, 2006 WL 894892, at *9 (finding defendant's alteration of the insurance coverage unenforceable for failure to comply with Colo. Rev. Stat. 10-4-110.5); *see also* Hearing on H.B. 87-1291 Before S. Bus. Affairs Comm., 56th Gen. Assemb., 1st Reg. Sess. (Colo. March 25, 1987) (the remedy section of the statute was included for situations in which an insurer provided no notice whatsoever to its insured regarding a decrease in coverage).

Colorado law, the interpretation of insurance policies presents questions of law. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004).  The primary goal in interpreting an insurance contract is to effectuate the intent of the parties.  *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994).  To accomplish this objective, the terms of the policy are given their plain and ordinary meanings, unless the policy itself indicates that the parties intended otherwise.  *Bohrer v. Church Mutual Ins. Co.*, 965 P.2d 1258, 1261-62 (Colo. 1998).  Policy provisions that are clear and unambiguous should be enforced as written.  *Chacon v. Am. Family Mutual Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).  Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured.  *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

The May 1, 2007 endorsement states that the covered "premise" is "4308 N. Garfield Ave., Loveland, Co."  Docket No. 36-13 at 1.  The endorsement lists the named insured as "Barry Gustafson" and lists the "Barry G. Gustafson Agency, Inc."  *Id*. Specifically, the use of the Garfield Office is listed as "Insurance Agent/Broker Office." *Id*.  Based on the terms of the May 1, 2007 endorsement, it is clear that American Family agreed to cover the risks associated with Mr. Gustafson's insurance agency and his activities as an agent.  The terms do not expressly limit Mr. Gustafson's coverage to those insurance activities performed as an agent for American Family.[3]  Accordingly,

---

[3]To the extent there could be an implied limitation to Mr. Gustafson's work as an American Family agent, the Court finds that the endorsement is ambiguous.  Applying the general rule that ambiguities in coverage are construed in favor of the insured, the Court finds that the endorsement of May 1, 2007 could be read to cover Mr.

the Court finds that Mr. Gustafson is entitled to summary judgment on his declaratory judgment claim that his activities as an insurance agent were covered by American Family's BOP.

### 2. *Advertising Injury*

Mr. Gustafson argues that the allegations in the underlying complaint that he "falsely advertised" fall within the wrongful conduct defined as the "use of another's advertising idea in your advertisement" in the BOP. Docket No. 36 at 14. Mr. Gustafson contends that the Rule 30(b)(6) testimony identifying the vinyl sign as the basis for American Family's CCPA claim supports the argument that the underlying complaint raises a claim for an advertising injury. *Id*.

The duty to defend concerns an insurer's duty to affirmatively defend its insured against pending claims. *Cyprus*, 74 P.3d at 299. Under Colorado law, the insurer's duty to defend is determined from the face of the complaint and without reference to facts outside of the pleadings. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004).[4]

_____

Gustafson's insurance activities regardless of whether they were undertaken with American Family or another agency. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (unique nature of insurance contracts and relationship between insurer and insured mandates that courts construe ambiguous provisions against insurer and in favor of providing coverage).

[4]Plaintiff argues that *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991), and the Tenth Circuit's opinion in *Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188 (10th Cir. 2010) ("AIMCO"), stand for the proposition that a Court may look outside the four corners of the complaint to determine whether the insurer has a duty to defend. Docket No. 36 at 13. The Court disagrees. In *Hecla*, the Colorado Supreme Court held that insurers who provide a defense to their insured could rely on the facts outside of the complaint to determine whether they could recover the costs of defense from the insured. *Cotter*, 90 P.3d at 827. The *Hecla* decision did

To defeat a duty to defend, an insurer must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991).  "Thus, the insurer bears the burden of establishing that 'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy.'"  *Cotter Corp.*, 90 P.3d at 829 (citation omitted).  Accordingly, where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613-14 (Colo. 1999).  If the underlying complaint includes more than one claim, a duty to defend against all claims asserted arises if any one of the claims arguably is a risk covered by the relevant insurance policy.  *Horace Mann Insurance Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1998) (citation omitted).  The existence of a duty to defend against a particular claim is a question of law.  *See Bumpers v. Guar. Trust Life Ins. Co.*, 826 P.2d 358, 360 (Colo. App. 1991); *see also Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).

---

not alter the general rule that the duty to defend arises solely from the complaint; on the contrary, *Hecla* only created a remedy for insurers who provided defenses to insureds when coverage ultimately did not exist. *Id.* at 828.  In *Cotter*, the Colorado Supreme Court reaffirmed that, for insurers who refuse to defend, courts must "base their duty to defend on the face of the complaint." *Id.*  Moreover, *AIMCO* did not broaden the complaint rule; instead, *AIMCO* stands only for the proposition that an insurer could not view "the allegations contained in a single complaint in isolation when it is aware multiple complaints arising from a common core of operative facts have been filed against the insured."  593 F.3d at 1196.  Although the *AIMCO* court discussed other forms of extrinsic evidence, it did so only in dicta.  *See id.* at 1195.  Thus, because the Colorado Supreme Court has held that courts should determine the duty to defend solely from the four corners of the complaint, the Court will not consider extrinsic evidence to determine whether American Family had a duty to defend the Underlying Action.

For Mr. Gustafson to show that American Family had a duty to defend, he must demonstrate that (1) that the underlying complaint can be read to allege the use of another's advertising idea in your advertisement, and (2) that Mr. Gustafson's advertising activities caused the injury which formed the basis for the underlying action. *DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F.3d 1010, 1015 (10th Cir. 2011); *see also Novell, Inc. v. Fed. Ins. Co.*, 141 F.3d 983, 985-86 (10th Cir. 1998).  In other words, Mr. Gustafson must establish that a claim for false advertising could reasonably entail the "use of another's advertising idea in your advertisement."

Colorado courts provide little guidance as to the proper interpretation of "the use of another's advertising idea."[5]  *DISH*, 659 F.3d at 1021.  The Court therefore will look to the definition provided by other jurisdictions.  Most courts presented with this issue have held that the "use of another's idea" means the "wrongful taking of the manner by which another advertises its goods or services."  *Discover Fin. Servs., LLC v. Nat'l Union Fire Ins. Co.*, 527 F. Supp. 2d 806, 824 (N.D. Ill. 2007) (citation omitted).  The term "advertisement" in the BOP is defined as "a notice that is broadcast or published to

---

[5]American Family cites to *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321 (Colo. App. 1995), to argue that a claim for an advertising injury must also have included an allegation that Mr. Gustafson misused a style of doing business. Docket No. 47 at 6.  In *Tynan's Nissan*, the court noted that a generic style of doing business must be related to advertising activities to constitute a covered "style of doing business" that will trigger liability coverage for an "advertising injury."  917 P.2d at 324-25.  As the Tenth Circuit recently discussed, *Tynan's Nissan* simply acknowledges that there must be a causal connection between the advertising and the injury alleged in the complaint. *Dish*, 659 F.3d at 1021.  Furthermore, a majority of courts have found a distinction between "style of doing business" and an "advertising idea."  *Dish*, 659 F.3d at 1025-26.  As discussed in *Dish*, a "style of doing business" generally refers to a company's comprehensive manner of operating its business, while an advertising idea is the dissemination "of information to promote a product."  *Id.*; *see also Novell*, 141 F.3d at 987.

the general public or specific market segments about your goods, products or services

for the purpose of attracting customers or supporters."  Docket No. 37-3 at 2-3 (CD R.

RFPD 0698-0699).

Construing the underlying complaint with the aforementioned definitions, the

Court finds that American Family's allegations in the underlying complaint can be read

to allege a claim for "advertising injury" as that term is defined in the BOP.  The

underlying complaint alleged that Mr. Gustafson "falsely advertised and solicited to

American Family customers[,] . . .  directed insureds to come into his office, and then he

solicited their business and redirected them to the correct American Family office."

Docket No. 36-1 at 7-8, ¶ 42.  American Family's allegation that Mr. Gustafson "falsely

advertised," "directed insureds to come into his office," and then "redirected them to the

correct American Family office" could be read to allege that Mr. Gustafson used

American Family's advertising idea – i.e. falsely advertised himself as an American

Family agent – when disseminating information to potential consumers in an attempt to

induce customers to purchase policies from Advantage Insurance.  Such allegations

are sufficient to trigger American Family's duty to defend.  *Compass*, 984 P.2d at 613-

14 (if "there is some doubt as to whether a theory of recovery within the policy coverage

has been pleaded, the insurer must accept the defense of the claim.").

In the second step of the analysis, the Court must decide whether the

complained of injury arose in the course of advertising.  *DISH*, 659 F.3d at 1015.  As

the Tenth Circuit stated in *Novell*, for an advertising injury to raise a duty to defend, the

"*advertising activities* must *cause* the injury-not merely expose it."  141 F.3d at 989

(emphasis in original; citation omitted).

In order to establish causation, the Court must first determine the injury alleged in the Underlying Action. *Dish*, 659 F.3d at 1026.  In the underlying complaint, American Family alleged that Mr. Gustafson "directed insureds to come into his office, and then he solicited their business and redirected them to the correct American Family office," and that because of Mr. Gustafson's "deceptive trade practices, American Family has suffered and continues to suffer damages as well as irreparable harm." Docket No. 38-1 at 7-8, ¶¶ 42-45.  As such, American Family's injury is the loss of previous or future customers caused by Mr. Gustafson's false advertising.

The underlying complaint establishes a direct link between Mr. Gustafson's false advertising and American Family's injury, namely, that Mr. Gustafson's advertising activities caused the diversion of customers from American Family to Advantage Insurance.[6]  Moreover, the underlying complaint alleges that Mr. Gustafson's activities were made in the course of business.  Docket No. 36-1 at 7-8. Therefore, the Court finds that the underlying complaint sufficiently alleges an injury inflicted in the course of Mr. Gustafson's advertising.  *Cyprus*, 74 P.3d at 301 (the duty to defend an entire suit arises "when the underlying complaint alleges any facts or claims that might fall within the ambit of the policy.").  Accordingly, because the allegations in the underlying complaint sufficiently alleged an "advertising injury," American Family had a duty to defend Mr. Gustafson in the Underlying Action.

---

[6]American Family's citation to *Nationwide Mut. Ins. Co. v. Mortensen*, 222 F. Supp. 2d 173 (D. Conn. 2002), is unpersuasive.  The Court in *Nationwide* found that "defendants have not pointed to allegations that advertising contributed to the misappropriation," *id*. at 186, which was the harm alleged.  By contrast, the complaint in the Underlying Action does contain allegations linking the advertising to the harm.

18

### 3.   Policy Exclusions

American Family argues that it has no duty to defend because Mr. Gustafson's claim falls within one of the exclusions to the policy.  *See* Docket No. 34 at 14. Specifically, American Family argues that Mr. Gustafson's advertising injury (1) was either caused by or at the direction of the insured with the knowledge that the act would inflict personal and advertising injury; (2) arises from a breach of contract; and (3) arises out of copyright, patent, trademark or trade secret infringement or other intellectual property rights.  *Id*.  The Court disagrees.  The underlying complaint does not allege that Mr. Gustafson's false advertising was done with the knowledge that the act would inflict personal advertising injury.  *See* Docket No. 36-1 at 7-8.  In addition, the CCPA claim in the underlying action is not based on Mr. Gustafson's breach of the insurance contract.  *Id*.  Moreover, the underlying complaint does not raise a claim for trademark or trade secret infringement.  *Id*.  Thus, Mr. Gustafson's claim does not fall within any of the identified exceptions in the policy.

American Family cites *Am. Family Mut. Ins. Co. v. Roth*, 886 N.E. 2d 1149 (Ill. App. 2008), for the proposition that Mr. Gustafson's coverage claim falls within one of the exceptions.  *Roth*, however, is distinguishable from this case.  In *Roth*, the underlying complaint did not allege a claim for false advertising under a consumer protection statute.  Moreover, unlike the underlying complaint in *Roth*, American Family's CCPA claim did not allege that Mr. Gustafson falsely advertised knowing it would violate the rights of others.

In sum, the Court finds that American Family had a duty to defend Mr. Gustafson in the Underlying Action because the claim that he falsely advertised might fall within the ambit of the Garfield Office BOP.  Accordingly, Mr. Gustafson is entitled to summary judgment on his breach of contract claim for American Family's failure to defend the Underlying Action.

## B.  Estoppel

Mr. Gustafson argues that American Family should be estopped from denying that it had a duty to defend.  Because the Court has already determined that American Family had a duty to defend, the estoppel claim is moot.  Thus, the Court will deny both parties' motions for summary judgment based on estoppel and will dismiss plaintiff's claim.

## C.   Bad Faith Breach of Contract

Mr. Gustafson argues that American Family acted in bad faith because it refused to defend the Underlying Action.  Docket No. 45 at 15.  Mr. Gustafson claims that American Family unreasonably relied on its own clerical error when it refused to defend the Underlying Action.  *Id*. at 15-16.  In response, American Family argues that its investigation of Mr. Gustafson's claim was reasonable because it relied on an opinion letter from Ms. Chaney, which determined that Mr. Gustafson's defense claim did not fall within the coverage limits.  *See* Docket No. 35-11.

Under Colorado law, an insurer must deal in good faith with its insured.  *Decker v. Browning-Ferris Indus. of Colo.*, 931 P.2d 436, 443 (Colo. 1997).  An insurer may breach its duty of good faith due to the insurer's conduct with third parties or with first

parties.  *Am. Family Mutual Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004).  In this

case, the parties' dispute arises out of a third-party insurance context because

American Family denied Mr. Gustafson's defense request.[7]

      A claim of bad faith in the third-party context occurs when an insurance company

acts unreasonably in investigating, defending, or settling a claim brought by a third

person against its insured under a liability policy.  *Farmers Group, Inc. v. Williams*, 805

P.2d 419, 421 (Colo. 1991).  In the third-party context, an insured's claim is based on

general principles of negligence and requires proof that the insurer acted "unreasonably

under the circumstances."  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 415 (Colo.

2004).  The reasonableness of the insurer's conduct must be determined objectively,

based on proof of industry standards.  *Id.*; *see also Allen*, 102 P.3d at 343 ("[T]he

reasonableness of an insurer's conduct is measured objectively based on industry

standards in both the first-party and third-party context.").  In the third-party context,

expert testimony is not required to establish the reasonableness of the insurer's

conduct where the standard of care does not entail specialized knowledge or skill

beyond that of the average juror.  *Allen*, 102 P.3d at 345.

      Whether an insurer's conduct was reasonable under the circumstances is

ordinarily a question of fact for the jury when conflicting evidence exists.  *Estate of*

*Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).  However, in

appropriate circumstances, as when there are no genuine disputes of material facts,

reasonableness may be decided as a matter of law.  *Id.*  Because the underlying facts

---

[7]The parties do not dispute that this case raises a third-party bad faith insurance
coverage dispute.  *See* Docket No. 47 at 7; Docket No. 45 at 15.

of this claim are undisputed, the Court finds that this case is appropriate for resolution at summary judgment.[8]

It is undisputed that American Family relied on Ms. Chaney's opinion letter to deny Mr. Gustafson's defense claim. Ms. Chaney's opinion letter explained that a denial of Mr. Gustafson's claim was consistent with how other jurisdictions have interpreted "advertising injury." The letter also opined that Mr. Gustafson's claim fell within the exclusions in the policy. Docket No. 35-11 at 18-24. Moreover, Ms. Chaney's opinion letter found that the underlying complaint did not sufficiently link the CCPA claim to the injuries alleged in the complaint. Thus, contrary to Mr. Gustafson's argument, Ms. Chaney's opinion letter relies on more than just the "clerical error" argument to deny Mr. Gustafson's coverage request.

As noted above, reasonableness is based on proof of industry standards. *Allen*, 102 P.3d at 343. Mr. Gustafson has presented no evidence of the industry standards relevant to the issues in this case. He has also presented no evidence showing why American Family's actions strayed from industry standards or why it was unreasonable for American Family to rely on Ms. Chaney's opinion letter. *See Allen*, 102 P.3d at 343 ("[T]he reasonableness of an insurer's conduct is measured objectively based on industry standards in both the first-party and third-party context."). Thus, viewing the evidence in a light most favorable to Mr. Gustafson, he fails to show that American Family's reliance on the opinion letter was unreasonable. *See Zolman v. Pinnacol*

---

[8]Mr. Gustafson's response argues that there is conflicting evidence in the record. Docket No. 45 at 16. However, the underlying facts in this case are largely undisputed. Mr. Gustafson only disagrees about the interpretation of those facts.

*Assurance*, 261 P.3d 490, 496-97 (Colo. App. 2011) (noting that, under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable"); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) (affirming summary judgment for insurer on insured's bad faith claim because the claim was fairly debatable).

Given that Mr. Gustafson has provided no evidence that American Family failed to follow industry standards or that it was otherwise unreasonable for American Family to rely on Ms. Chaney's opinion letter, Mr. Gustafson fails to raise a genuine dispute of material fact that American Family acted in bad faith when it refused to defend the Underlying Action.  Accordingly, American Family is entitled to summary judgment on Mr. Gustafson's claim for breach of the duty of good faith and fair dealing.

### D.   Delay in Contract in Violation of Colo. Rev. Stat. §§ 10-3-1115, 10-3-1116

Mr. Gustafson asserts claims pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.  As pertinent here, Colo. Rev. Stat. § 10-3-1115(1)(a) provides that a "person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Section 10-3-1116(1) provides that a "first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action." Accordingly, the remedies provided by Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 are limited to first-party claimants.  Because Mr. Gustafson asserts third-party claims, these statutes provide no remedy.  *See New Salida Ditch Co., Inc. v. United Fire & Cas. Ins. Co.*, No. 08-cv-00391-JLK, 2009 WL 5126498, at *5 (D. Colo. Dec. 18, 2009)

(finding that Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 do not apply to third-party insurance claims).

### E.   Abuse of Process

Mr. Gustafson argues that American Family's filing of the Underlying Action was an abuse of process.  Docket No. 45 at 17-18.  He also contends that American Family filed the Underlying Action to coerce him to close his Advantage Insurance company and that he suffered economic damages as a result.  *Id*.

The abuse of process tort provides a remedy in situations where litigation is properly initiated, but is misused through an irregular, generally coercive act.  *See Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006).  To prevail on his abuse of process claim, Mr. Gustafson must prove that American Family (1) had an ulterior purpose for initiating the Underlying Action, (2) took an action that was improper in the regular course of legal proceedings; and (3) caused Mr. Gustafson damages. *See Aztec Sound Corp. v. W. States Leasing Co.*, 510 P.2d 897, 899 (Colo. App. 1973).  Thus, an abuse of process claim requires two basic showings: "using legal *means* improperly, and harboring an improper *motive* for doing so."  *Partminer Worldwide, Inc. v Siliconexpert Techs., Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *2 (D. Colo. Feb. 10, 2010) (emphasis in original).

An ulterior purpose is one that the legal proceeding was not designed to accomplish.  Usually, the ulterior purpose is to obtain an advantage in a collateral matter or to achieve the surrender of property or the payment of money.  *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir. 2009).  Here, Mr. Gustafson has raised

a triable issue of fact with respect to American Family's ulterior motive in filing the

Underlying Action.  Viewing the evidence in a light most favorable to Mr. Gustafson, a

reasonable juror could find that American Family initiated the Underlying Action in an

attempt to pressure Mr. Gustafson to close Advantage Insurance.

Although an ulterior motive may be inferred from the wrongful use of the

process, the wrongful use may not be inferred from the motive.  *James H. Moore &*

*Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994).  Thus,

to survive summary judgment, Mr. Gustafson must also show that American Family

improperly used legal means in the Underlying Action.  *Id*. ("although the litigant's

motive may be important in determining whether there was an 'ulterior purpose' for the

use of the process, it still must be established that, viewed objectively, there was an

improper *use* of the process.") (emphasis in original).

An improper use of the legal process occurs when a particular procedural tool is

used in an attempt to accomplish a result which that tool, when properly used, could not

provide.  *See, e.g., Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 170 (Colo. App.

2003) (finding an abuse of process when party filed lawsuit against the wife without a

valid claim to obtain money from husband); *Aztec Sound*, 510 P.2d 897 (Colo. App.

1973) (defendant used replevin action not to regain property, but to force plaintiff to pay

money not due); *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo.

App. 1998) (party requested a declaratory judgment not to obtain relief, but to coerce

the opposing party to transfer its software to a third party).  Mr. Gustafson argues that

American Family improperly used the legal process because its complaint lacked

factual merit.  However, in an abuse of process claim, even the filing of a lawsuit the filer knows to be unfounded is insufficient to demonstrate the improper use of the legal process.  *James H. Moore*, 892 P.2d at 373 ("If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, *even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim*") (emphasis in original).  Instead, the focus is on the nominal purpose for which the process is invoked.  *Partminer*, 2010 WL 502718, at *3.

Here, American Family's complaint in the Underlying Action requested damages and injunctive relief because of Mr. Gustafson's alleged breach of contract, misappropriation of trade secrets, computer fraud, deceptive trade practices, and intentional interference with contractual obligations.  *See* Docket No. 36-1.  The relief sought in the Underlying Action – injunctive relief and damages – was consistent with the claims American Family alleged and, had American Family prevailed, it could have secured such relief.  In addition, as the court in the Underlying Action noted, "American Family had a colorable basis to assert that Mr. Gustafson's admitted assistance to customers switching from American Family to other insurers constituted conduct prohibited under the parties' agreement."  *See* Docket No. 47-1 (Case No. 08-cv-02772-MSK, Order on Motion to Amend Judgment from the Underlying Action). The court in the underlying action declined Mr. Gustafson's motion for attorneys' fees in part because it did not find that American Family's claim was "substantially groundless." *Id*. at 7.  Based on the record, it is clear that American Family pursued its lawsuit to

accomplish a result available in the litigation and any ulterior motive American Family possessed was incidental to the proceedings. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.") (citation omitted); *see also Yadon v. Lowry,* 126 P.3d 332, 337 (Colo. App. 2005) (essence of the tort of abuse of process is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve).  Thus, because Mr. Gustafson cannot show that American Family used legal means improperly, his claim for abuse of process fails and American Family is entitled to summary judgment with respect to Mr. Gustafson's abuse of process claim.

## IV.  CONCLUSION

Wherefore, it is

**ORDERED** that Defendant American Family Mutual Insurance Company's Motion for Summary Judgment [Docket No. 34] is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

**ORDERED** that Plaintiff Barry G. Gustafson's Motion for Summary Judgment – Breach of Contract and Estoppel – Liability Only [Docket No. 36] is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

**ORDERED** that summary judgment shall enter in favor of defendant American Family Mutual Insurance Company and against plaintiff Barry G. Gustafson on plaintiff's Third, Fourth, and Sixth claims for relief.  It is further

**ORDERED** that summary judgment shall enter in favor of plaintiff Barry G. Gustafson and against defendant American Family Mutual Insurance Company on plaintiff's first and second claims for relief.  It is further

**ORDERED** that plaintiff's fifth claim for relief is denied as moot.

DATED October 5, 2012.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge